UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

AVAE A. CABRAL, a/k/a Ava Cabral,
Plaintiff-Appellant,

v.

MEDICAL COLLEGE OF VIRGINIA

No. 97-2299

HOSPITAL; DONNA C. PIERSON,
Individually and in her capacity as
Administrator of the Gastrointestinal
Endoscopy Department,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-96-961)

Submitted: March 17, 1998

Decided: April 2, 1998

Before NIEMEYER, HAMILTON, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Beverly D. Crawford, EL-AMIN & CRAWFORD, Richmond, Vir-
ginia, for Appellant. Richard Cullen, Attorney General, Claude Allen,
Deputy Attorney General, Neil A.G. McPhie, Senior Assistant Attor-
ney General, Guy W. Horsley, Jr., Senior Assistant Attorney General,
Richmond, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Avae A. Cabral, a black female, was employed as a registered nurse in the Endoscopy Unit (the "Unit") of the Gastrointestinal Division of the Department of Medicine at the Medical College of Virginia ("MCV") from June 1, 1990, to December 12, 1995. Cabral alleges that Defendants MCV and Donna C. Pierson, Cabral's former supervisor, subjected her to disparate treatment because of her race. Specifically, she alleges that she was the only black person working in the Unit and that she was subjected to the racist attitudes of fellow employees, which ultimately resulted in her termination from employment. She seeks recovery against MCV under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-5 (West 1994 & Supp. 1997), and she seeks recovery from Pierson in her individual capacity under 42 U.S.C. §§ 1981, 1983 (1994). Defendants moved for summary judgment, which the district court granted. Cabral timely appeals from the district court's order. Finding no error, we affirm.

Cabral's termination centers around a series of events involving the treatment of a patient in the Unit on November 17, 1995. After Cabral discharged an HIV-positive patient to another hospital unit, a nurse reported that a needle that had been used as a connector ("piggybacked") for an intravenous ("I.V.") solution had pulled free and scratched another employee. As a result of the report, Pierson conducted an investigation into the matter. The investigation revealed that Cabral had committed several nursing errors. Accordingly, Pierson issued a written disciplinary notice and notification of termination based on the investigative findings that Cabral failed to: (1) follow the treating physician's orders to change the I.V. fluid; (2) follow the University Safety Policy and the AIDS policy by failing to tape the I.V. connector needle securely; (3) adequately document the patient's low blood pressure and treatment on his chart; and, (4) report the patient's unstable blood pressure upon discharge from the Unit to the

2

receiving hospital unit. Cabral did not challenge her termination through the grievance procedure for state employees. After her termination, Defendants replaced Cabral with another black female, who has since been promoted within the Unit. In addition, a second black female has been hired to work in the Unit since Cabral's termination.

Two white female nurses were also disciplined as a result of the November 17 incident. Gail DeCosta, Nurse Manager for the Unit, was counseled because she failed to report the incident. There was no evidence, however, that DeCosta was involved in the treatment or transport of the patient on that day. Jennifer Johnson, another nurse in the Unit, also received counseling. Sometime after Cabral "piggy-backed" the patient's I.V. line, Johnson noticed that the I.V. tubing had become disconnected, so she reconnected it. However, Johnson failed to check the entire I.V. line to ensure that the needle was taped. Thus, she was essentially disciplined for failing to catch Cabral's mistake.

This court reviews grants of summary judgment de novo. See Jones v. Wellham, 104 F.3d 620, 626 (4th Cir. 1997). Summary judgment is properly granted if the movant can show that she is entitled to judgment as a matter of law and that there is no material fact in dispute when viewing the evidence in the light most favorable to the nonmovant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).

Disparate treatment occurs when an employer treats certain people less favorably than others on the basis of some protected classification such as race. See International Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977). "Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." Id. In Title VII disparate treatment cases, the plaintiff has the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-55 (1981). If the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to articulate some legitimate, non-discriminatory reason for the adverse employment action. See id. If the defendant establishes a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to establish by a preponderance of

3

the evidence that the legitimate reason asserted by the defendant was actually a pretext for discrimination. See id.

To establish a prima facie case of disparate treatment under Title VII, Cabral must prove that: (1) she was a member of a protected class; (2) the prohibited conduct of employees outside the protected class was as serious as the misconduct engaged in by Cabral; and (3) the employer imposed harsher disciplinary measures against her than against employees outside the protected class.[1] See Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994). As the district court properly found, however, Cabral failed to establish a prima facie case of disparate treatment. See id.

To establish her claim of disparate treatment, Cabral compares her own conduct and subsequent discipline to the conduct and subsequent discipline of Jennifer Johnson. She contends that Johnson was at least as responsible for the November 17 incident as she was, in light of the fact that Johnson was admittedly the last person to come in contact with the I.V. In addition, Cabral notes that Johnson admitted that she also failed to tape the needle and failed to document that she reattached the I.V. tubing. Thus, Cabral contends that she and Johnson engaged in essentially the same conduct; however, because she was fired and Johnson received only disciplinary counseling, Cabral claims disparate treatment.

Even though Cabral is in a protected class and received a harsher punishment than Johnson, Cabral failed to establish that Johnson's misconduct was as serious as Cabral's misconduct. See id. Defendants disciplined Johnson for failing to detect and correct Cabral's mistake. Johnson was not responsible for discharging or treating the patient, and she was not responsible for initially establishing the I.V. line; rather, Johnson's only role in the incident involved her reattaching some disconnected tubing that did not involve the needle. Furthermore, Pierson stated that it was not necessary for Johnson to docu-

_____

[1] The claims against Pierson under §§ 1981, 1983 are governed by the same proof scheme as Cabral's Title VII claim against MCV. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07, 515 (1993); Williams v. Cerberonics, Inc., 871 F.2d 452, 457-58 (4th Cir. 1989). Thus, no separate analysis of those claims is necessary.

ment that she merely reattached the loose tubing. Cabral, however, was responsible for treating and discharging the patient, as is evidenced by the fact that she signed the patient's chart as discharge nurse. Cabral also acknowledges that she "piggybacked" the I.V. line with the needle that ultimately scratched the other employee and exposed her to HIV.[2] Although Cabral also disputes the physician's specific order, the patient's chart reflects that Cabral did not note that she had spoken with the treating physician and changed the patient's I.V. per the physician's orders. Thus, the record reflects that Cabral's misconduct was more serious than Johnson's misconduct. Accordingly, Cabral failed to establish a prima facie case of disparate treatment. See id.

Even had Cabral stated a prima facie case of disparate treatment, she failed to establish that Defendants' nondiscriminatory motive for terminating her employment was merely pretext. See Burdine, 450 U.S. at 252-55. Cabral's repeated accusations of racism, without more, are insufficient to establish that the proffered reasons were pretext.[3] See Anderson, 477 U.S. at 249 (stating that plaintiff cannot rely on conclusory allegations to create factual dispute warranting trial); see also Williams, 871 F.2d at 456 (holding that assertions of discrimination are not enough to withstand substantial evidence of legitimate reasons for employer's action). Furthermore, after Cabral's termination, two additional black females were hired to work in the Unit, one of whom has since been promoted. Accordingly, as the dis-

_____

[2] Cabral does not acknowledge, however, that it was her mistake in failing to tape the needle in the "piggybacked" I.V. line that resulted in the employee's injury; rather, she contends that she followed "standard nursing procedures" in establishing the I.V. line and that Johnson is to blame because she was the last person to come in contact with the patient before he left the Unit.

[3] Although Cabral disputes the specifics of Defendants' investigative findings, she has not established that a material fact is in dispute because she does not dispute that she provided nursing services to the patient on November 17, 1995; she connected the I.V. line to the patient; she did not note the treating physician's orders on the patient's chart; she signed the patient's chart as discharge nurse and discharged the patient to another hospital unit; and, the I.V. line came loose after the patient's discharge from the Unit. See Anderson, 477 U.S. at 256-57.

5

trict court properly found, Cabral presented no evidence that the decision to terminate her employment was illegally based on racial considerations. Therefore, the district court properly granted summary judgment.**4**

We affirm the district court's order granting summary judgment to Defendants. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____

**4** Cabral contends on appeal that the district court erroneously considered evidence of Cabral's unflattering peer evaluations and previous disciplinary charges. She alleges that the notice of termination did not state that her past work history was a factor, and therefore, the district court should not have considered it. Even without consideration of that information, Cabral failed to rebut the nondiscriminatory reasons for her termination proffered by the Defendants. See Burdine, 450 U.S. at 252-55.

6